**UNITED STATES of America,**
**Plaintiff,**

v.

**Virgil F. KANAN, Donald R. Elbel, George M. Hill, R. E. Wolfe, Martin Breitenbach and James F. Byrne, Defendants.**

**No. C–16284–Phx.**

United States District Court
D. Arizona.

Aug. 9, 1963.

C. A. Muecke, U. S. Atty., Phoenix, Ariz., Oliver Dibble, Kenneth E. Murphy, Doris Williamson, Trial Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Edward P. Morgan, of Welch, Mott & Morgan, Washington, D. C., for defendant Kanan.

O'Connor, Anderson, Westover, Killingsworth & Beshears, Harry J. Cavanagh, John P. Otto and John E. Savoy, Phoenix, Ariz., for defendants Hill, Breitenbach and Byrne.

Morris Shenker, St. Louis, Mo., for defendant Elbel.

John J. Flynn, Phoenix, Ariz., for defendant Wolfe.

POWELL, Chief Judge.

Defendants' Motion to Suppress Evidence was granted in part by an order entered in this case. The oral ruling was on February 6, 1963. The basis of the ruling concerning corporate records of Arizona Savings & Loan Association was that the statutes, A.R.S. §§ 6–122 and 6–127, authorized the Superintendent of Banks to examine institutions covered by the Act in conjunction with Federal officers. The ruling and order resulted in suppression of the private books and papers of defendants. It did not suppress the corporate records of the Arizona Savings & Loan Association.

On April 11, 1963, the Supreme Court of Arizona filed its opinion dismissing the appeal in Stowell v. Arizona Savings & Loan Association, 93 Ariz. 310, 380 P.2d 606. The opinion treats with the identical association and receivership and four of the defendants involved in this case. The opinion determines the status and authority of the Superintendent of Banks as receiver. Defendants have moved the Court to reconsider the ruling of February 6, 1963, and the order following. The motion to reconsider is granted.

The facts developed on hearings of the motions to suppress are as follows: On June 15, 1959, an action was started in the Superior Court of the State of Arizona for Maricopa County by David O. Saunders, the then Superintendent of Banks for the State of Arizona. He was appointed receiver and the officers were immediately restrained from exercising any control over the business or premises of the Arizona Savings & Loan Association or removing or concealing any of the books, records or documents belonging to the Association or to any individual defendant. That order was directed to four of the six defendants in this case.

The Attorney General caused process to be served on the defendants by the county sheriff. The receiver took immediate possession of the premises and records. The officers of the Association were excluded and took nothing from the premises on June 15, 1959. They were permitted to return later for personal things not connected with the Association.

David O. Saunders was appointed permanent receiver by an order entered in the Superior Court on July 3, 1959. Later he was designated ex-officio receiver and William K. Humbert was appointed receiver by an order entered July 8, 1959. That order detailed the authority of the receiver as follows:

" * * * and that said William K. Humbert shall have all the powers and privileges provided by the laws of this State with respect to the Superintendent of Banks as Receiver of a building and loan association and in addition to the foregoing, all of the rights, powers, privileges and authority which were held or possessed by the Association and its officers, directors, members and creditors.

"That the said William K. Humbert, as Receiver, be and he is hereby authorized and empowered to conduct and carry on all of the regular and ordinary business and affairs of the Association without the necessity of procuring from this Court a specific order pertaining to each such item of business, including but not limited to the payment of all necessary and reasonable expenses of operation, necessary supplies, employment of appraisers and building inspectors, and disbursement of funds pursuant to loan commitments made by Arizona Savings and Loan Association prior to this Receivership which appear to the Receiver to be proper in all respects, and other matters incidental to the performance of his duties as such Receiver and the conduct of the affairs of the said Association.

"Provided, however, that when said Receiver is confronted with decisions of great significance and of an extraordinary nature which will likely have a substantial effect upon the operations of the said Association and the interests of its shareholders and depositors and which will likely have a substantial effect upon the plans of interested parties for the rehabilitation and reorganization of the Association, the Receiver shall present all of such matters upon petition to this Court, and action shall be taken with respect thereto in conformity with such orders as the Court may make thereon."

Thereafter Mr. Humbert resigned and Albert B. Colby was appointed receiver by order of September 3, 1959, which specified his authorities and powers as follows:

"IT IS FURTHER ORDERED that the said Albert B. Colby as such Co-Receiver be and he is hereby vested with all the powers and authority conferred by statute and the orders of this Court and in particular the order of this Court made and entered herein on July 8, 1959, setting forth the authority and powers of the said William K. Humbert as operating receiver herein."

Late in 1959 Mr. Colby and the attorney assigned to him, a Mr. Darrell Park-

er, interviewed the United States Attorney. They requested an investigation as they were of the opinion there had been acts committed by the officers that might be a violation of Federal statutes. The Federal Bureau of Investigation was requested to investigate. Mr. William M. Drew, Special Agent of the Federal Bureau of Investigation went to the Association offices where he talked to Mr. Colby, the receiver. He arrived February 24, 1960, was permitted to use a desk, called for and received records, files and correspondence, which he read and copied. He continued to investigate the records there into May of 1960.

When Mr. Drew went to the Association offices he had no search warrant, subpoena or warrant of arrest. He had ample time to obtain a search warrant. He had no court order and none was obtained from the Superior Court permitting the search of the records or authorizing the receiver to turn records over to the Federal Bureau of Investigation.

Thereafter evidence discovered as a result of Mr. Drew's investigation was presented to the Grand Jury. No subpoena was issued. The records were presented by the receiver at the request of the United States Attorney. An indictment was returned late in 1960. That indictment was dismissed. A subpoena was later issued and all the evidence was again presented to a second Grand Jury, which returned the indictment in this case.

I must determine two questions on reconsideration of the motion to suppress the corporate records as evidence against the individual defendants. (1) Do defendants have standing to assert the motion to suppress? (2) Did the receiver have the authority to consent to the search?

The search was directed at these defendants. They had the control of the corporate records until that control was removed by the court order and service of process June 15, 1959. From that date on, defendants could not exercise physical control in order to protest a search of corporate records.

Corporate records are protected from unreasonable search and seizure. Individual officers have been permitted to question the seizure of corporate records. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1920), Henzel v. United States, 296 F.2d 650 (5 Cir. 1961).

In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court held that a person accused of possessing narcotics could attack the Government's allegedly unlawful seizure of them even though his presence in the apartment where they were seized was merely that of guest or invitee and he did not admit ownership of the narcotics. This broadens the class of persons who are entitled to move to suppress evidence. Rule 41(e), Federal Rules of Criminal Procedure, 18 U. S.C.A., says, "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained * * *."

Defendants are entitled to move to suppress the corporate records as evidence against them. They have the requisite standing and are "aggrieved" by the search and seizure.

The search and seizure of the corporate records was with the consent, authority and approval of Albert B. Colby, receiver of the Association. Defendants argue that he did not have the authority to consent to the search as he did not secure the approval of the Superior Court. I held the receiver occupied a dual capacity, as Superintendent of Banks, a statutory office, and as Receiver, an office by court appointment.

Stowell v. Arizona Savings & Loan Association, 93 Ariz. 310, 380 P.2d 606 (1963), holds that the Superintendent of Banks does not continue with the statutory authority of superintendent once he is appointed receiver.

"A.R.S. § 6–424 contemplates that a petition for receivership filed in

the name of the superintendent of banks pursuant to A.R.S. § 6–423 will be granted only by order of the superior court. The statute merely states who the receiver shall be. It does not restrict the power of the court over the receiver, nor establish a different status from that of a common law receiver. cf. Sawyer v. Ellis, supra. We are of the opinion that the function of the superintendent of banks as a receiver under § 6–422 et seq. is wholly ministerial."

Since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts must follow state courts on state law questions. Schram v. Smith, 97 F.2d 662 (9 Cir. [Ariz.] 1938). This was codified into the Rules of Decision Act, 28 U.S.C.A. § 1652. King v. Order of Travelers, 333 U.S. 153, 157, 68 S.Ct. 488, 92 L.Ed. 608 (1948). I must therefore recede from my former holding. Mr. Colby was not acting in behalf of the Superintendent of Banks when he asked an investigation of the records to determine if there had been a violation of federal law. He was acting in the capacity of a common law receiver of the Association. He had only such authority as the orders of the court gave to him.

Plaintiff argues that the orders vest wide discretionary powers in the receiver. This is true. He must operate a business and cannot apply for an order on every transaction. But the limitation in the last paragraph of the order is obvious. It is a decision of extraordinary nature likely to have a substantial effect upon the plans of interested parties for the rehabilitation and reorganization of the Association to decide to call in the Federal Bureau of Investigation to investigate possible violation of federal criminal statutes. I have studied the orders and am now convinced that the acts of Mr. Colby do not come within his discretionary powers.

Plaintiff argues that under Dier v. Banton, 262 U.S. 147, 43 S.Ct. 533, 67 L. Ed. 915 (1923), the possession of the books and records of the Association passed from the defendants as officers to the receiver. That opinion says the right to protest against the use of his books and papers as evidence against the bankrupt ceases as soon as possession and control passes to the receiver and the court. The opinion affirms the order that allowed the books and papers to be subpoenaed from the bankruptcy court for use before a state court grand jury.

The distinction between this case and Dier is that in the Dier case there was an application to the court for use of the books and papers which were in the custody of the court.

" * * * All we hold here is that the court below having exercised discretion to allow the use of the books and papers in the custody of its officer upon subpoena by another court, the alleged bankrupt's rights under the Fourth and Fifth Amendments have not been violated."

Plaintiff says this motion is a collateral attack on the actions of the receiver. There was no way defendants could raise the question of violation of their constitutional rights in the state court action prior to the filing of this case. The motion here tests the legal sufficiency of the authority of the receiver to waive the Fourth Amendment rights of the defendants. I am now of the opinion that the defendants did not lose their right to urge the motion because of the filing of the receivership action on June 15, 1959. They were entitled to have a judicial determination of the reasonableness of the search of the files either in the receivership action in the Superior Court or before a United States Commissioner under Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.A.

I hold that the order denying the suppression of the corporate records as evidence will be set aside. A new order to conform to this opinion will be prepared by defendants. This opinion will constitute the findings of fact.